UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| W. JAMES MAC NAUGHTON, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 10016 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| SHAI HARMELECH, ETAN HARMELECH, USA SATELLITE & CABLE, INC., JUDITH HARMELECH, CHICAGO TITLE LAND TRUST COMPANY, JPMORGAN CHASE BANK, N.A., and CITIBANK, N.A., | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

W. James Mac Naughton holds two judgments against Shai Harmelech and his company, USA Satellite & Cable, Inc. In this diversity suit against Shai, Shai's son Etan Harmelech, Shai's wife Judith Harmelech, USA Satellite & Cable, Chicago Title Land Trust Company, JPMorgan Chase, and Citibank, Mac Naughton seeks to collect on the judgments, alleging that the Harmelechs fraudulently concealed Shai's ownership interest in his home by putting the deed in Etan's name and channeling the mortgage payments through Etan. Shai, Etan, and USA Satellite & Cable move to dismiss some claims as a sanction for misconduct by Mac Naughton, and the remaining claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Docs. 194, 200. The motions are granted.

**Background**

From May 7, 2009 to July 16, 2009, Mac Naughton defended Shai and USA Satellite & Cable against a lawsuit brought by Russian Media Group ("RMG"). *See Russian Media Grp., LLC v. Cable America, Inc.*, No. 06 C 3578 (N.D. Ill. filed June 30, 2006). That brief

1

professional relationship ended in a dispute over legal bills; Shai and Mac Naughton resolved the dispute by executing a promissory note requiring Shai to pay certain sums to Mac Naughton, but Shai quickly defaulted. *See Mac Naughton v. Harmelech*, 693 F. App'x 154, 155 (3d Cir. 2017). In October 2009, Mac Naughton filed suit against Shai in federal court in New Jersey, where Mac Naughton lives, for breach of the note. *See Mac Naughton v. Harmelech*, 2016 WL 3771276, at *2-5 (D.N.J. July 13, 2016).

The RMG suit ultimately settled, and in May 2011 the court entered a stipulated judgment in favor of RMG against Shai and USA Satellite for $286,374.76. Doc. 100-6. Shai paid $141,374.76 towards the judgment before he stopped making payments. Doc. 208 at 8. In August 2014, in return for Mac Naughton's agreement to dismiss a claim he brought against RMG in New Jersey state court, RMG assigned to Casco Bay Holdings, a company controlled by Mac Naughton, the unpaid portion of RMG's judgment against Shai and USA Satellite. *Id*. at 2-3. (Yes, reader, you read that correctly: Mac Naughton's company purchased from RMG the judgment that RMG had obtained from Mac Naughton's clients in the very case in which Mac Naughton represented those clients.) The assignment provided that Mac Naughton would remit to RMG fifty percent of the first $50,000 he collected from Shai and USA Satellite and forty percent of any amounts collected in excess of $100,000, up to $43,000 in total. *Id*. at 4.

After Casco Bay obtained the judgment from RMG, Mac Naughton began to research Shai's assets and found that Shai's son Etan was listed as the buyer on the 2005 purchase deed for Shai's residence in Highland Park, Illinois. Doc. 180 at ¶¶ 18, 22-26. After further research, Mac Naughton found that the house was purchased for approximately $440,000, and that Etan had been a college student working as an unpaid intern at the time. *Ibid*.

On December 14, 2014, Casco Bay and Mac Naughton brought this suit against Shai, Etan, and USA Satellite & Cable, alleging that Shai fraudulently conveyed his Highland Park house to Etan in 2005, when he knew that the RMG lawsuit was imminent, for the purpose of concealing his assets from potential creditors. Doc. 1. The complaint alleged that Casco Bay had standing to pursue the suit as owner of the RMG judgment, *id*. at ¶ 45, and that Mac Naughton had standing because he was pursuing three separate suits against Shai in state and federal court in New Jersey, including the above-referenced suit for breach of the promissory note, *id*. at ¶¶ 25-38. Casco Bay and Mac Naughton asked to attach the house in order to satisfy their claims against Shai and USA Satellite & Cable. *Ibid*. Casco Bay was represented by Mac Naughton—who also represented himself in connection with his personal claims against Shai—and another attorney, Steven Ross. Docs. 3, 5.

Shai moved to disqualify Mac Naughton (as lawyer) and Casco Bay (as party) from pursuing assets to satisfy the RMG judgment, arguing that Mac Naughton had violated New Jersey Rule of Professional Conduct 1.9(a) when his company Casco Bay obtained the RMG judgment. Doc. 21 at 1. Rule 1.9(a) states: "A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent in writing."

Judge Holderman, who presided over this case until his retirement, held an evidentiary hearing on the disqualification motion. Doc. 35. On March 17, 2015, Judge Holderman granted Shai's motion to disqualify Mac Naughton from representing Casco Bay, finding that "Mr. Mac Naughton is engaging in a position materially adverse to the interests of his former clients in a substantially related matter in violation of New Jersey Rule of Professional Conduct 1.9(a),"

*ibid*., and ordering that "Mr. Mac Naughton will have no further action in [Casco Bay's efforts to pursue the RMG judgment]," Doc. 100-16 at 15. Judge Holderman declined to disqualify Casco Bay from pursuing the RMG judgment, and Casco Bay remained a plaintiff with Ross as its sole counsel. *Id*. at 11-12. Judge Holderman told Ross that he could obtain co-counsel, "but not Mr. Mac Naughton." *Id*. at 16. Judge Holderman ordered that Casco Bay "proceed without using any information that Mr. Mac Naughton obtained from his prior representation of [Shai and USA Satellite], as well as any information Mr. Mac Naughton may have later obtained as an adversary to his former clients." Doc. 35. Judge Holderman further stated:

> Once a lawyer takes on a representative obligation, that lawyer has a continuing obligation to adhere to the code of professional conduct. Mr. Mac Naughton did not do that here. Mr. Mac Naughton cannot now insulate himself by creating a company [Casco Bay]. The company he created cannot utilize his improprieties to prosecute this action … .

Doc. 100-16 at 15. Shai did not question Mac Naughton's ability to represent himself in his effort to collect on his personal claims against Shai, and Mac Naughton continued making filings on his own behalf in that part of the case. Doc. 49.

In September 2016, the New Jersey federal court entered a $71,763 judgment for Mac Naughton in his suit against Shai for breach of the promissory note. Doc. 196-1. Mac Naughton and Casco Bay then filed a first amended complaint in this case, in which Casco Bay sought to collect the RMG judgment and Mac Naughton sought to collect the New Jersey breach-of-contract judgment. Doc. 85. In late November 2017, Shai paid the New Jersey breach-of-contract judgment, plus costs and post-judgment interest. Doc. 196-19. The New Jersey federal court then denied Mac Naughton's motion for attorney fees, reasoning that he had brought the case *pro se*. *Mac Naughton v. Harmelech*, 2017 WL 6372233 (D.N.J. Dec. 12, 2017). Mac Naughton's appeal of that ruling is currently before the Third Circuit. *See Mac Naughton v. Harmelech*, No. 18-1047 (3d Cir.).

4

Meanwhile, in September 2017, while motions to dismiss the first amended complaint were pending in this case, Mac Naughton caused the RMG judgment to be assigned from Casco Bay to himself. *See Russian Media Grp.*, No. 06 C 3578, Dkt. 438. Mac Naughton, now representing himself as the sole plaintiff and holder of both the RMG judgment and the New Jersey breach-of-contract judgment, asked this court for leave to file a second amended complaint. Doc. 153. The proposed second amended complaint added as defendants Judith Harmelech and the Chicago Title Land Trust Company in connection with a newly discovered trust agreement, Doc. 153-1 at ¶¶ 64-68, as well as Citibank and JPMorgan Chase, which held the mortgages on the property, *id*. at ¶¶ 69-74, and asked the court to invalidate both the trust agreement and the mortgages.

The court granted Mac Naughton's motion to amend without prejudice to Defendants moving to dismiss the second amended complaint. Doc. 179. The court asked the parties to address "whether Mac Naughton's seeking in court to collect the Russian Media Group judgment from his former clients violates the [March 17, 2015] order entered in this case," and also "whether, putting aside any rules of professional conduct, the court has the inherent authority to prohibit … Mac Naughton from seeking in court to collect the Russian Media Group judgment from his former clients, … Shai Harmelech and USA Satellite & Cable." *Ibid*.

## Discussion

### I. RMG Judgment

Defendants contend that Mac Naughton is violating Judge Holderman's March 17, 2015 order by once again representing a party, this time himself, in an attempt to collect on the RMG judgment, and they urge the court to dismiss the suit insofar as it pertains to the RMG judgment as a sanction for the violation. Doc. 195 at 25-26.

5

"[I]t is firmly established that the power to punish for contempts is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (alteration and internal quotation marks omitted). "The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987). "Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding," based on "a preponderance of the evidence," "that the culpable party willfully abused the judicial process." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776-78 (7th Cir. 2016). Here, the relevant facts are not in dispute: Mac Naughton caused the RMG judgment to be assigned from Casco Bay to himself and entered the case *pro se* to pursue that judgment in his personal capacity, despite Judge Holderman's order disqualifying him from appearing as counsel in connection with any attempt to collect the RMG judgment.

Mac Naughton has had two opportunities—in his response and surreply briefs—to explain how his appearance in connection with the RMG judgment is consistent with Judge Holderman's order, but he has evaded the issue. In fact, Mac Naughton does not even acknowledge that Judge Holderman disqualified him from representing Casco Bay and ordered him to "have no further action in [Casco Bay's efforts to pursue the RMG judgment]." Doc. 100-16 at 15. Instead, Mac Naughton misrepresents the scope of Judge Holderman's order, characterizing it as merely a "Handcuff Order" that "precludes [him] from using any information he learned at any time about any of the Defendants while they were his adversaries." Doc. 216 at 6 n.2. That description omits entirely the disqualification portion of the order.

Rather than attempt to explain how he is not violating Judge Holderman's order, Mac Naughton argues that new evidence—specifically, deposition testimony from Shai in a related

6

case—shows that he is not really violating Rule 1.9(a) and therefore that the order should be invalidated. Doc. 216 at 16, 18. That argument misses the point. In determining whether a party has knowingly defied a court order, it makes no difference whether the order is subject to challenge. "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal [or to seek vacatur or stay of the order], but, absent a stay, he must comply promptly with the order … . Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Maness v. Meyers*, 419 U.S. 449, 458 (1975); *see also Alexander v. Chi. Park Dist.*, 927 F.2d 1014, 1025 (7th Cir. 1991) ("[W]e can affirm the contempt citation without even reaching the issue of the order's validity.").

Mac Naughton also argues, in a brief footnote, that his appearance in connection with the RMG judgment does not violate Rule 1.9(a) because that rule does not apply to an attorney's *pro se* activity. Doc. 216 at 13 n.6. Again, the pertinent question here is not whether Mac Naughton is violating Rule 1.9(a), but whether he is violating Judge Holderman's order. Mac Naughton does not argue that Judge Holderman's order only disqualified him only from representing Casco Bay and left him free to represent himself in connection with the RMG judgment; indeed, as noted, Mac Naughton does not acknowledge the disqualification order at all. Mac Naughton has therefore forfeited any argument that Judge Holderman's order did not extend to *pro se* representation in connection with the RMG judgment. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir.

7

2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted).

In any event, Judge Holderman's order that Mac Naughton have "no further action" in connection with the RMG judgment does not hinge on the purely nominal distinction between Mac Naughton representing Casco Bay—which Mac Naughton himself controlled—and Mac Naughton representing himself. Judge Holderman permitted Casco Bay to proceed with the case only on the condition that it not utilize any information Mac Naughton obtained during his representation of Shai and USA Satellite & Cable. That condition would be rendered meaningless if Mac Naughton were permitted to represent himself in pursuing the RMG judgment. Judge Holderman made clear that he would not let Mac Naughton "insulate himself" from his professional obligations "by creating a company"; it follows *a fortiori* that Mac Naughton may not insulate himself from those obligations by transferring the RMG judgment back to himself and then representing himself *pro se* in an effort to collect on that judgment. Doc. 100-16 at 15.

Furthermore, although it is unnecessary to do so to find that Mac Naughton has violated Judge Holderman's order, this court, had it been necessary to reach the issue, would have held that Rule 1.9(a) does apply to *pro se* representations. The decision Mac Naughton cites to the contrary stresses that Rule 1.9(a) prohibits attorneys from representing "another *client* … in a substantially related matter in which that client's interests are materially adverse to the interests of the former client." *See In re Wood*, 634 A.2d 1340, 1342-43 (N.H. 1993); *see also Farrington v. Law Firm of Sessions, Fishman*, 687 So.2d 997, 1000-01 (La. 1997). But Mac Naughton *is*

8

representing another client with interests materially adverse to Shai and USA Satellite & Cable: himself. Nor is there any plausible policy basis for reading the term "client" so strictly. An attorney proceeding *pro se* can use "confidential factual information" that he obtained in the prior representation against his former clients just as easily as an attorney representing someone else. *Watkins v. Trans Union, LLC*, 869 F.3d 514, 522 (7th Cir. 2017).

Dismissal with prejudice is an appropriate sanction for Mac Naughton's willful defiance of Judge Holderman's order. Because Mac Naughton is representing himself, dismissal with prejudice will punish him rather than a possibly innocent client. *Cf. Ball v. City of Chicago*, 2 F.3d 752, 758 (7th Cir. 1993) ("Disciplinary sanctions directed against the misbehaving lawyer are likely to prove not only more just to the innocent client, but also more effective as a deterrent … .") (internal quotation marks omitted). Additionally, Mac Naughton was fully compensated for the harm that Shai actually inflicted upon him—Shai's failure to make payments on the promissory note that settled their dispute over legal bills—when Shai satisfied the New Jersey breach-of-contract judgment. Dismissal of this case merely decreases the likelihood that Mac Naughton will obtain a windfall. (The court says "decreases" rather than "eliminates" because Mac Naughton is pursuing the RMG judgment against Shai and/or USA Satellite in several other suits. *See Russian Media Grp.*, No. 06 C 3578; *Mac Naughton v. Alden Mgmt. Servs., Inc., et al.*, No. 16 C 9027 (N.D. Ill. filed Sept. 18, 2016); *Mac Naughton v. Asher Ventures, LLC*, No. 17 C 4050 (N.D. Ill. filed May 29, 2017).)

For the foregoing reasons, Mac Naughton's claims based on the RMG judgment are dismissed with prejudice. Given this disposition, the court need not address whether it has the inherent authority to prohibit Mac Naughton from seeking in court to collect the RMG judgment from his former clients. The court's research has revealed no cases addressing that precise issue,

likely because no attorney before now has had the audacity to purchase from that attorney's litigation opponent a judgment entered against his or her own client and then attempt to enforce that judgment against the client.

## II. Breach-of-Contract Judgment

Defendants argue that Mac Naughton lacks standing to pursue the New Jersey breach-of-contract judgment because Shai paid that judgment in full, plus costs and interest, before Mac Naughton filed the second amended complaint. Doc. 195 at 20-21. Mac Naughton does not dispute that Shai has satisfied the judgment. Instead, he maintains that he still has a viable attorney fee claim from the New Jersey suit, despite the district court's denial of his fee motion, because his appeal of the denial is pending. Doc. 216 at 8-9.

"[T]he irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation and internal quotation marks omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (internal quotation marks omitted).

Mac Naughton does not have standing to enforce an attorney fee award that he does not hold. Mac Naughton cannot show that Shai and USA Satellite & Cable owe him any more money in connection with the breach-of-contract claim, and thus he cannot show that he has "suffered an invasion of a legally protected interest." The merely "hypothetical" prospect that the Third Circuit will reverse the New Jersey district court and grant Mac Naughton's request for attorney fees does not presently give him standing to pursue a collection action, just as a plaintiff

could not collect on an anticipated judgment in a pending lawsuit. And even setting aside standing, the New Jersey district court's ruling that Mac Naughton is not entitled to attorney fees is final for purposes of collateral estoppel, which settles the matter as far as this court is concerned. *See CFE Grp., LLC v. FirstMerit Bank, N.A.*, 809 F.3d 346, 351 (7th Cir. 2015) ("As a general rule, federal common law borrows the preclusion principles of the law of the state in which the federal court that dismissed the diversity suit sat."); *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1187 (N.J. App. 2011) ("New Jersey courts hold that a judgment is final even pending an appeal.").

For the foregoing reasons, Mac Naughton's claims based on the breach-of-contract judgment are dismissed for lack of jurisdiction. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015).

## Conclusion

The motions to dismiss the second amended complaint are granted. The claims predicated on the RMG judgment are dismissed with prejudice. The claims predicated on the New Jersey breach-of-contract judgment are dismissed for lack of subject matter jurisdiction. Because the grounds for dismissal apply with equal force to the moving defendants and non-moving defendants alike, the claims against all defendants are dismissed.

June 5, 2018

United States District Judge